IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST W. GREGORY, | ) | CASE NO. 3:20-CV-01292 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 405 by Ernest W. Gregory seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Gregory's 2017 application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under terms of my

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Jeffrey J. Helmick in a non-document order entered on July 8, 2020.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.

1

initial[5] and procedural[6] orders, the parties have submitted briefs,[7] along with supporting charts[8] and fact sheets.[9] The parties have met and conferred with the objective of reducing or clarifying the matters at issue.[10] They have participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be reversed and the matter remanded.

## ALJ Opinion

Gregory, who was 52 years old at the time the ALJ's decision was issued,[12] has a limited education[13] and, as noted in the opinion denying a prior claim for benefits in 2013, worked previously as a roofer helper/laborer and an asphalt worker.[14] He testified at the hearing that he lives alone in a trailer and is divorced with three adult children. He receives food stamps, does not have a driver's license and, having quit school in the eighth grade, is able to read a newspaper and perform basic math but cannot read a recipe.[15] He further testified that he spends up to four hours per day laying down and watching television, and

---

[5] ECF No. 6.
[6] ECF No. 14.
[7] ECF Nos. 15 (Gregory), 18 (Commissioner), 20 (Gregory reply).
[8] ECF Nos. 15, Attachment 2 (Gregory), 18, Attachment 1 (Commissioner).
[9] ECF No. 15, Attachment 1 (Gregory).
[10] ECF No. 21.
[11] ECF No. 23.
[12] Tr. at 23.
[13] *Id*.
[14] *Id*.
[15] *Id*. at 20-21.

further stated that he uses a cane when he walks, although he did not appear at the hearing with a cane.[16]

The ALJ found that he has the following severe impairments: borderline intellectual functioning; lumbar degenerative disc disease, L3-L5; and cervical degenerative disc disease, C5-C6.[17] He also found that Gregory has the following non-severe impairments: hypertension, depression, generalized anxiety disorder, and a history of a right lower extremity fracture.[18]

The ALJ then analyzed whether an impairment or combination of impairments met or medically equaled a listed impairment.[19] To that end, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.11 (neurodevelopmental disorder).[20] Specifically, he analyzed whether Gregory met the "B" criteria of these listings,[21] which are identical.[22] That analysis found that Gregory has moderate limitations in the areas of understanding, remembering and applying information, as well as concentrating, persisting, and maintaining pace.[23] Mild

---

[16] *Id*. at 21.
[17] *Id*. at 18.
[18] *Id*.
[19] *Id*.
[20] *Id*.
[21] *Id*. at 18-19.
[22] *Cox v. Commissioner*, 2020 WL 8768317, at *3 (W.D. Mich. Dec. 28, 2020), report and recommendation adopted by *Cox v. Saul*, 2021 WL 423119 (W.D. Mich. Feb. 8, 2021) (B criteria of Listings 12.04 and 12.06 are identical); *Huffman v. Comm'r of Soc. Sec.*, 2021 WL 4205069, at *6 (W.D. Mich. Sept. 16, 2021) (B criteria for Listings 12.04 and 12.11 are identical).
[23] Tr. at 19.

limitations were found in the areas of interacting with others and in adapting and managing oneself.[24]

In reaching those conclusions, the ALJ found a 2017 psychological examination to be "persuasive" as it was "generally consistent with and supported by the record as a whole."[25] That examination stated that Gregory denied seeking any mental health treatment, indicating that he managed these issues on his own.[26] The examination also recorded that Gregory was trying to teach himself to read and was making progress, as well as that he managed his own finances without difficulty.[27] It also noted that Gregory has a depressed mood and "constricted affect," and that his physical condition prevented him from doing "several" household chores, although he was still able to do laundry and the dishes.[28] Finally, the examination stated that Gregory showed "good judgment" while having "borderline cognition."[29] The examiner opined that Gregory was able to understand, remember, and carry out one-step or complex workplace instructions, with no other mental limitations.

---

[24] *Id*.
[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] *Id*.

As to physical limitations, the ALJ addressed records from several medical visits in 2017,[30] as well as 2018 visits to his primary care physician, another neurosurgeon and a lumbar MRI.[31] He then considered a November 2018 medical source statement from Haley Robuck, CNP, that stated that Gregory was able to stand/walk for 30 minutes at a time, and for a total of four hours each of sitting and standing/walking in an eight-hour workday.[32] She also stated that due to decreased neck mobility, arm weakness, neck and arm pain, flareups of thoracic pain, sitting/standing/walking limitations, and mobility issues, Gregory would be prevented from consistently completing an eight-hour workday, five days a week.[33]

The ALJ found these opinions "less persuasive," noting that they are "somewhat" inconsistent with the record as a whole.[34] In particular, the ALJ observed that the exam records discussed earlier showed that "despite limitations in range of motion and some chronic strength deficit in the lower right extremity, [Gregory] retained normal sensation, symmetric reflexes, and otherwise normal strength. He used no assistive devices and had conflicting reports to providers on the effectiveness of his treatment modalities."[35]

---

[30] *Id*. at 21. Emergency room visit in April; CT scan performed several days later; primary care visit in May; MRI ordered at the visit; physical therapy sessions; visit to a neurosurgeon in July; pain management with follow up in September; cervical spine imaging in December.
[31] *Id*. at 22.
[32] *Id*.
[33] *Id*.
[34] *Id*.
[35] *Id*.

5

As to other opinion evidence, the ALJ found persuasive the opinions of state agency medical consultants on Gregory's physical limitations, and the opinions of state agency psychological consultants as to Gregory's mental limitations.[36]

Finally, the ALJ found Gregory's own statements about his impairments, symptoms and functions "somewhat inconsistent" with the record.[37] In that regard, the ALJ recognized that the record does demonstrate that Gregory has "continued severe impairments," but found that "there are no indications of record that these impairments cause disabling limitations."[38] Specifically, the ALJ concluded that his chronic conditions, such as borderline intellectual functioning and limitations arising from his spinal impairments, are stable, and that the functional limitations have been factored into the residual functional capacity.[39]

That RFC provides that Gregory has the residual functional capacity for light work except that the work can be done alternating between a seated or standing position so long as not more than 10% off task; no operating foot controls with the right lower extremity, occasional climbing of stairs, no climbing of ladders and the like, no balancing on the right lower extremity, rare (meaning less than occasional but not completely precluded) kneeling, occasional crouching, no crawling, no uneven floor surfaces, work with an SVP of 1 to 2 where the pace of production is not dictated by an external source over which the

---

[36] *Id.*
[37] *Id.* at 23.
[38] *Id.*
[39] *Id.*

6

individual has no control such as an assembly line or conveyor belt, work that is repetitive from day to day with few and expected changes, and reading, writing and math are not important.[40]

After finding that Gregory cannot perform his past work under this RFC, and receiving the testimony of a VE that Gregory could perform the requirements of a merchandise marker, a sorter and an inspector/hand packager, occupations where jobs exist nationally in sufficient numbers, the ALJ concluded that Gregory was not disabled.[41]

### Issues on Judicial Review

Gregory raises a single issue for judicial review:

> Whether the administrative law judge's finding of residual functional capacity is supported by sufficient evidence where the administrative law judge erred in his analysis of supportability and consistency, especially with respect to the opinion of Treating Nurse Practitioner Robuck, because he failed to evaluate Gregory's thoracic spine herniation, and he cherry-picked the record to support his conclusion.[42]

### Analysis

**A.     Standards of Review**

Initially, this matter is reviewed under the well-established standard of substantial evidence, which need not be restated here. Further, the opinion evidence is reviewed under the new rubric that eliminated the long-standing treating source rule and replaces it with a

---

[40] *Id*. at 20.
[41] *Id*. at 24-25.
[42] ECF No. 15.

7

test whereby the ALJ determines the persuasiveness of an opinion by reference to how well supported the opinion is and how consistent it is with the other evidence.[43]

**B.    Application of Standards**

Gregory essentially argues that the ALJ missed the cumulative effect of his cervical spine issues, specifically dextroscoliosis of the thoracolumbar junction, a T 10-11 disc herniation and cervical spondylosis.[44] He claims that this error occurred first at Step Two where the ALJ failed to consider the severity of his thoracic spine problems[45] and then was manifested in improperly downgrading the opinion of CNP[46] and Gregory's own statements about his pain,[47] to eventually formulating the RFC that was relied upon by the VE.[48]

I begin by reviewing what the ALJ did find at Step Two. He specifically found that lumbar degenerative disc disease, L3-L5, and cervical degenerative disc disease, C5-C6 were severe impairments.[49] Plainly, this enumeration does not include T10-11 disc herniation, which is also not mentioned in the listing of non-severe impairments.[50]

That said, the Commissioner rightly observes that any error at Step Two is not necessarily a basis for reversal if the ALJ considers all relevant impairments later in the

---

[43] 20 C.F.R. § 416.920c.
[44] ECF No. 15 at 6.
[45] ECF No. 20 at 2.
[46] *Id*. at 2-4.
[47] *Id*. at 4.
[48] *Id*.
[49] Tr. at 18.
[50] *Id*.

8

analysis.[51] Here, the Commissioner contends, the ALJ did discuss thoracic issues later in his opinion.[52]

In examining the subsequent references to thoracic spine issues cited by the Commissioner, I could locate only the references on Tr. 21 to the June 2017 MRI,[53] the pain management visit of September 2017.[54] The ALJ characterized the MRI as showing a small herniation at T10-11 that had not significantly changed from 2015.[55] He then described the first September pain management visit as showing "diffuse tenderness" in the thoracic region and when epidural steroid injections were prescribed.[56] At the follow up session, Gregory was described as informing the doctors that the steroid injections produced no relief for his thoracic pain.[57]

The actual treatment notes from that October 17 follow up appointment are more detailed. In particular, they record that Gregory reported "0%" relief from thoracic pain from the steroid injections.[58] Moreover, Gregory reported that the thoracic region was now "more painful" after the injections and that it now "balls up and spasms;" the pain was rated "9/10."[59] That level of pain is reported elsewhere in the records. The December 3, 2018

---

[51] ECF No. 18 at 3, citing *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 625, 634 (6th Cir. 2016).
[52] *Id.*, citing Tr. at 18, 21-22.
[53] Tr. at 382-83.
[54] *Id.* at 423-25.
[55] *Id.* at 21.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 434.
[59] *Id.* at 434-35.

meeting with Haley Robuck records that Gregory described the pain level as "unbearable" and in a visit three weeks later with Dr. Jeffrey Harwood, M.D., Gregory related that the pain level was "9/10" and that he "had thrown up because the pain is so bad" and had gone to an ER on December 20 for pain.[60]

I well understand that subjective reports of pain by the claimant are not determinative of reduced function and need not be accepted at face value by the ALJ. But the consistency of these reports over time, especially beginning in late 2018, and their apparent support in the clinical record from contemporary exam notes,[61] suggest that the debilitating pain from Gregory's thoracic impairments cannot be explained away simply by reference to the small size of the herniation. Indeed, although the state agency reviewers may have seen the MRI that shows the herniation, those reviewers, who produced their opinions in 2017,[62] do not indicate that they especially noted the herniation or, to the point, even reviewed the pain reports cited above.

Thus, as Gregory alleges, the failure to even consider that a small herniation could produce disabling levels of pain resulted in the thoracic impairment being shunted aside all during the ALJ analysis, and significant parts of the record that supports Gregory's claim to disabling pain being left unanalyzed or cursorily dismissed. Without proper analysis of

---

[60] *Id*. at 516-19.
[61] See, *id*. at 533-37 (Dec. 3, 2018, Haley Robuck office exam notes - range in motion in back limited by pain; severe point tenderness on right and left of entire thoracic region; muscle spasms in right thoracic region); 516-19 (Dec. 22, 2018, Dr. Harwood exam notes – unable to fully flex, extend neck, pain with rotations to either side).
[62] *Id*. at 95-112.

these portions of the record cited above, the final decision of the Commissioner is not supported by substantial evidence.

**Conclusion**

For the reasons stated, the decision the Commissioner here is reversed as not supported by substantial evidence and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2021  	s/William H. Baughman Jr.
	United States Magistrate Judge